**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

**KEVIN D. ASH, as MANAGER
of ELLISDALE CONSTRUCTION, LLC,
MANAGER of A&W COURTHOUSE
COMMONS, LLC, and MANAGER of
A&W LANSDOWNE, LLC,**

**Plaintiff,**

**v.**

Civil Action No. <u>1:20-mc-0039</u>

**RICHARD E. WARD, II,**

**Defendant.**

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR
AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND AN ORDER TO
<u>SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION..................................................................................................1

II.     STATEMENT OF RELEVANT FACTS ...............................................................2

       a.  Ellisdale..................................................................................................2

       b.  Lansdowne...............................................................................................4

       c.  Courthouse..............................................................................................5

III.    ARGUMENT .......................................................................................................7

IV.   CONCLUSION ................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Amazon.com, Inc. v. WDC Holdings, LLC*,
   No. 1:20-cv-484, 2020 WL 4353563, at *9 (E.D. Va. July 28, 2020) .............................. 7, 10

*Bethesda Softworks LLC v. Interplay Entertainment Corp.*,
   452 Fed. Appx. 351 (4th Cir. 2011) ........................................................................................ 7

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*,
   415 U.S. 423 (1974) .................................................................................................................. 8

*Hughes Network Sys., Inc. v. InterDigital Communications Corp.*,
   17 F.3d 691 (4th Cir. 1994) ...................................................................................................... 9

*Keystone Builders, Inc. v. Floor Fashions of Virginia, Inc.*,
   829 F.Supp. 181 (W.D. Va. 1993) ............................................................................................ 9

*Morton v. Beyer*,
   822 F.2d 364 (3d Cir. 1987) ...................................................................................................... 8

*Pashby v. Delia*,
   709 F.3d 307 (4th Cir. 2013) .................................................................................................... 8

*Sarsour v. Trump*,
   245 F.Supp.3d 719 (E.D. Va. 2017). ........................................................................................ 8

*Toure v. Hott*,
   458 F.Supp.3d 387 (E.D. Va. 2020) .................................................................................... 8, 10

*University of Texas v. Camenisch*,
   451 U.S. 390 (1981) ................................................................................................................ 11

*Us. ex rel. Rahman v. Oncology Assocs.*,
   198 F.3d 489 (4th Cir. 1999) .................................................................................................... 9

*Winter v. Natural Resources Def. Council, Inc.*,
   555 U.S. 7 (2008) ............................................................................................................... 10, 11

**Rules**

Fed. R. Civ. P. 65(a)-(b) ..................................................................................................... 7, 9

**Statutes**

28 U.S.C. § 1332 ............................................................................................................. 1

## I.   INTRODUCTION

Plaintiff Kevin D. Ash ("Ash"), in his capacity as Manager of Ellisdale Construction, LLC ("Ellisdale"), Manager of A&W Courthouse Commons, LLC ("Courthouse"), and Manager of A&W Lansdowne, LLC ("Lansdowne"), respectfully submits this memorandum in support of his emergency *ex parte* motion for a temporary restraining order and for an order to show cause why a preliminary injunction should not issue enjoining Defendant Richard E. Ward, II ("Ward") from unlawfully withdrawing funds from the bank accounts of Ellisdale, Lansdowne, and Courthouse (collectively, the "Companies").[1]

The facts in this case are simple.  As the result of a business dispute, Ward took it upon himself, without notice to the Companies or Ash, to set up personal bank accounts in his name only and subsequently transfer a total of $2,500,000 from the Companies' respective bank accounts and into his own personal bank accounts.  Fortunately, executives at MVB Bank, Inc. ("MVB") noticed the transfers and have initiated a temporary freeze on these funds.  MVB has stressed that they will soon have to unfreeze these funds, which will immediately leave the Companies without sufficient funds to operate their businesses.  Ellisdale will be unable to: (1) perform on multiple current and future large-scale construction projects, (2) meet payroll, (3) pay numerous sub-contractors, (4) cover hundreds of thousands of dollars in issued and outstanding checks to subcontractors and others, and (5) maintain sufficient liquidity in its year-end financial statements to be able to meet bonding requirements imposed by both its lenders and clients.  Furthermore, Lansdowne and Courthouse will be nearly insolvent, unable to pay bills and to meet payroll.

---

[1] Ash is a resident of Loudoun County, Virginia, and a citizen of the Commonwealth of Virginia. Ward is a resident Summit County, Utah, and a citizen of the State of Utah.  Both Ash and Ward regularly conduct business in Virginia, and the conduct at issue occurred in Virginia.  Furthermore, the amount in controversy exceeds $75,000.  Therefore, this Court has diversity jurisdiction under 28 U.S.C. § 1332 (a)(1) and 28 U.S.C. § 1332 (b).

Ash has been unsuccessful in his attempts to convince MVB to permanently freeze the Companies' funds to Ward. Ash has also been unsuccessful in his attempts to convince Ward to direct MVB to return the Companies' funds to their appropriate bank accounts. Accordingly, Ash is left with no choice but to come before this Court to seek emergency injunctive relief prohibiting Ward from absconding with the Companies' operating funds and the collateral that secures Ellisdale's payment and performance bonds, thereby causing irreparable harm to the Companies' business operations and goodwill.

Ward has no legal claim to any of the funds at issue in this action. His withdrawal of the Companies funds violates express and unambiguous provisions in each of the Companies' respective operating agreements. Ward should be prohibited from usurping the Companies' operating agreements in an effort to destroy the reputation and goodwill that the Companies have spent years building. Absent immediate intervention by the Court, the Companies will undoubtedly be irreparably harmed and may never recover.

## II.   STATEMENT OF RELEVANT FACTS

### a.   Ellisdale

Ellisdale provides a wide set of construction services, including pre-construction consulting, design, and general contracting. (*See* Ex. 1, Affidavit of Kevin D. Ash ("Ash Aff.") ¶ 7.) Ellisdale's purposeful integration of architects, designers, and experienced contractors helps it deliver high-quality and cost-effective projects. (*Id.* ¶ 8.) Ash and Ward created Ellisdale in 2004, when they combined their respective experiences in the industry to form a successful construction company. Ash brought to over a decade of high-level construction management experience, where he managed tens of millions of dollars' worth of projects in some of the industries' leading companies. (*Id.* ¶ 9.) By contrast, Ward has largely operated as a silent partner, providing capital

and consulting regarding Ellisdale's financing as necessary.  (*Id.* ¶ 10.)  By design, Ward has largely taken a back seat in Ellisdale's operations.  (*Id.*)  With Ash running the day-to-day operations, Ellisdale has thrived and has amassed a portfolio touting numerous multi-million-dollar development projects.  (Ex. 1, Ash Aff. ¶ 11.)

The Amended and Restated Operating Agreement of Ellisdale Construction, LLC ("Ellisdale OA"), effective January 1, 2010, currently governs Ellisdale's operations.  (*Id.* ¶ 12.) A true and accurate copy of the Ellisdale OA is attached hereto as "Exhibit 2."  As stated therein, Ellisdale is a Maryland Limited Liability Company organized and operated under the laws of the state of Maryland.  (Ex. 1, Ash Aff. ¶ 7; Ex. 2 § 17.01.)  Ellisdale's current principal offices are located at 106 Harrison Street SE, Suite 100, Leesburg, VA, 20175.  (Ex. 1, Ash Aff. ¶ 7.)

Under Exhibit A to the Ellisdale OA, Ash and Ward are the only two Members of the Ellisdale organization, each holding 50% ownership interest thereto.  (Ex. 1, Ash Aff. ¶ 13; Ex. 2, Ex. A.)  Article VI of the Ellisdale OA governs the Managers of the company, and Section 6.02 provides that "[t]he Board of Managers will be composed of Managers, the current Managers being Kevin D. Ash and Richard E. Ward, II[,]" whose term "will continue until removed pursuant to Section 6.03."  (Ex. 1, Ash Aff. ¶ 14; Ex. 2 § 6.02.)

Section 6.01 of the Ellisdale OA provides in relevant part: "Each Manager will . . . be a fiduciary with respect to the Company."  (Ex. 1, Ash Aff. ¶ 15; Ex. 2 § 6.03.)  Section 6.09(f) is also clear that an "individual Member or Manger does not have any authority to . . . sell or transfer all or substantially all of the Company's assets other than in the ordinary course of business . . . ." (Ex. 1, Ash Aff. ¶ 15; Ex. 2 § 6.09(f)).  Therefore, it is clear that Ward, acting as Manager and as a fiduciary of Ellisdale, has no authority to transfer substantially all of Ellisdale's operating and collateral assets to himself.

3

Notwithstanding his transparent lack of authority to do so, Ward has initiated transfers of $2,200,000 from Ellisdale's bank accounts at MVB into his own bank accounts.  (Ex. 1, Ash Aff. ¶ 16.)  Specifically, Ward is attempting to transfer $800,000 from Ellisdale's operating account (MVB 131415) to his own personal account, and to transfer $1,400,000 from Ellisdale's bond collateral account (MVB 78042) into his own personal account.  (Ex. 1, Ash Aff. ¶ 16.)

Should Ward be permitted to successfully misappropriate Ellisdale's operating and collateral funds, Ellisdale unable to: (1) perform on multiple current and future large-scale construction projects, (2) meet payroll, (3) pay numerous sub-contractors, (4) cover hundreds of thousands of dollars in outstanding checks, and (5) maintain sufficient liquidity in its year-end financial statements to be able to meet bonding requirements.  (*Id.* ¶ 17.)   This will material threaten Ellisdale's ability to continue performing under its current construction contracts, and irreparably damage Ellisdale's business, reputation, and goodwill.  (*Id.* ¶ 18.)   By contrast, enjoining Ward from misappropriating Ellisdale's operating funds will not prejudice nor cause irreparable harm to Ward.  (*Id.*)

### b.    Lansdowne

Lansdowne is a Virginia limited liability company that holds and rents out office space that it owns at 109-111 East Market Street, Leesburg, Virginia, 20176.  (Ex. 1, Ash Aff. ¶ 20.)  The Amended and Restated Operating Agreement of A&W Lansdowne, LLC ("Lansdowne OA"), effective August 27, 2015, currently governs Lansdowne's operations.  (Ex. 1, Ash Aff. ¶ 21.)  A true and accurate copy of the Lansdowne OA is attached hereto as "Exhibit 3."  Lansdowne's current principal offices are located at 106 Harrison Street SE, Suite 100, Leesburg, VA, 20175. (Ex. 1, Ash Aff. ¶ 20.)  Under Exhibit A to the Lansdowne OA, Ash and Ward each own 37.5% of the Class A Membership Interest in Lansdowne.  (Ex. 1, Ash Aff. ¶ 22; Ex. 3, Ex. A.)

4

Furthermore, pursuant to Section 7 of the Lansdowne OA, Ash and Ward are two (2) of the three (3) Managers of Lansdowne.  (Ex. 1, Ash Aff. ¶ 23; Ex. 3 § 7.)

Significantly, Section 7(B) of the Lansdowne OA provides in pertinent part: "All decisions shall require the unanimous consent of the Managers."  (Ex. 1, Ash Aff. ¶ 24; Ex. 3 § 7(B).)  Ward has initiated a transfer of $50,000 from Lansdowne's account (MVB 75162) into his own personal account.  Ash, a Manager, does not consent in any way to Ward's transfer of $50,000 from Lansdowne's account into Ward's personal account.  (Ex. 1, Ash Aff. ¶ 25.)  Therefore, Ward lacks the unanimous consent of the Managers necessary to effectuate this transfer under Section 7(B) of the Lansdowne OA.  Should Ward be permitted to successfully misappropriate Lansdowne's operating funds, Courthouse will be unable to pay its bills.  (*Id.* ¶ 26.)  This will cause irreparable damage to Lansdowne's business, reputation, and goodwill.  (*Id.* ¶ 27.)  By contrast, enjoining Ward from misappropriating Courthouse's operating funds will not prejudice nor cause irreparable harm to Ward.  (*Id.*)

### c.    Courthouse

Courthouse is a Virginia limited liability company that holds and rents out office space that it owns, with a mortgage, at 113 East Market Street, Leesburg, VA 20176.  (Ex. 1, Ash Aff. ¶ 29.)  The Operating Agreement of A&W Courthouse, LLC ("Courthouse OA"), effective on or about August 13, 2014, currently governs Courthouse's operations.  (*Id.* ¶ 30.)  A true and accurate copy of the Courthouse OA is attached hereto as "Exhibit 4."  Courthouse's current principal offices are located at 106 Harrison Street SE, Suite 100, Leesburg, VA, 20175.  (*Id.* ¶ 29.)  Under Exhibit A to the Courthouse OA, Ash and Ward each own 50% of the Membership Interest in Courthouse.  (Ex. 1, Ash Aff. ¶ 31; Ex. 4, Ex. A.)  Furthermore, pursuant to Section 7 of the Lansdowne OA, Ash and Ward are the Managers of Courthouse.  (Ex. 1, Ash Aff. ¶ 32; Ex. 4 § 7.)

Significantly, Section 7(B) of the OA provides in pertinent part: "All decisions shall require the unanimous consent of both Managers." (Ex. 1, Ash Aff. ¶ 33; Ex. 4 § 7(B).) Ward has initiated a transfer of $250,000 from Courthouse's account (MVB 78050) into his own personal account. Ash, the other Manager, does not consent in any way to Ward's transfer of $250,000 from Courthouse's account into Ward's personal account. (Ex. 1, Ash Aff. ¶ 34.) Therefore, Ward lacks the unanimous consent of both Managers necessary to effectuate this transfer under Section 7(B) of the Courthouse OA. (*Id.*) Should Ward be permitted to successfully misappropriate Lansdowne's operating funds, Courthouse will be unable to pay its bills and its hefty mortgage. (*Id.* ¶ 35.) This will cause irreparable damage to Courthouse's business, reputation, and goodwill. (*Id.* ¶ 36.) By contrast, enjoining Ward from misappropriating Courthouse's operating funds will not prejudice nor cause irreparable harm to Ward. (*Id.*)

Ash made several attempts to resolve this matter without Court intervention. (*Id.* ¶ 37.) Ash has emailed and called Ward several times over the past several days, and Ward has been thus far unwilling to instruct MVB to transfer the Companies' funds back into their respective accounts. (*Id.*) Ash has spoken with appropriate executives at MVB, but has been unsuccessful in convincing MVB to permanently freeze the Companies' funds or to reverse Ward's attempted transfers. (*Id.*)

In addition, as set forth in the Declaration of Derek H. Swanson ("Swanson Decl."), attached hereto as "Exhibit 6," on December 21, 2020, Ash's counsel, the undersigned, sent a letter to the appropriate executives at MVB, requesting that the Companies' funds be permanently frozen and that Ward's transfers be reversed and the Companies' monies be returned to their appropriate accounts, but MVB has communicated to Ash that it cannot do so, and that MVB will soon be releasing the funds to Ward. (Ex. 5, Swanson Decl. ¶¶ 4-5.) Furthermore, on December 22, 2020, counsel for Ash, the undersigned, requested that outside counsel for the Companies, with whom

6

Ward regularly communicates, provide Ward with the undersigned's contact information so that Ward's counsel could contact the undersigned and attempt to resolve this matter without intervention by the Court.  (Ex. 5, Swanson Decl. ¶ 5.)  However, counsel for Ash, the undersigned, has not received any contact by Ward's counsel.  (*Id.*)[2]

### III.    ARGUMENT

Rule 65 of the Federal Rules of Civil Procedure authorizes a district court to issue temporary restraining orders and preliminary injunctions.  Fed. R. Civ. P. 65(a)-(b).  In issuing such an order, the Courts' principal concern is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." *Amazon.com, Inc. v. WDC Holdings, LLC*, No. 1:20-cv-484, 2020 WL 4353563, at *9 (E.D. Va. July 28, 2020) ((internal quotations omitted, quoting *Bethesda Softworks LLC v. Interplay Entertainment Corp.*, 452 Fed. Appx. 351, 354 (4th Cir. 2011)). Regardless of the type of action the movant seeks, "[t]he standard for granting either a TRO or preliminary injunction is the same." *Sarsour v. Trump*, 245 F.Supp.3d 719, 728 (E.D. Va. 2017). *Ex parte* proceedings, such as this, are the precise style of action to which the Supreme Court has stated are proper for "preserving the status quo" and "preventing irreparable harm." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).  "The Fourth Circuit defines the 'status quo' as the 'last uncontested status

---

[2] Rule 65(b)(2) of the Federal Rules of Civil Procedure provides: "[T]he movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Here, as further specified in the Declaration of Derek H. Swanson, Plaintiff's undersigned counsel certifies that he has made reasonable efforts to request contact by Defendant's counsel to resolve this dispute without the Court's intervention, but to no avail.  Currently, without the Court's intervention, Plaintiff will suffer immediate and irreparable harm, as thoroughly discussed in the Affidavit of Kevin D. Ash.  Therefore, Plaintiff's undersigned counsel has met this requirement under Rule 65(b)(2) and the instant Motion should be considered, and granted, upon its merits.

between the parties which preceded the controversy.'" *Toure v. Hott*, 458 F.Supp.3d 387, 396 (E.D. Va. 2020) (quoting *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013)).

While courts are often hesitant to grant TROs when the movant may be compensated by an award of monetary damages,[3] "extraordinary circumstances may give rise to the irreparable harm required for" injunctive relief, "[e]ven if [the] loss can be compensated by money damages at judgement[.]" *Hughes Network Sys., Inc. v. InterDigital Communications Corp.*, 17 F.3d 691, 694 (4th Cir. 1994). For example, Virginia "has a significant ancillary interest in not allowing an unscrupulous defendant to defraud a prevailing party by threatening the availability of funds to satisfy the judgment." *Keystone Builders, Inc. v. Floor Fashions of Virginia, Inc.*, 829 F.Supp. 181, 184 (W.D. Va. 1993). Moreover, "when exigent circumstances threaten the post-judgment availability of property necessary to satisfy a judgment in the plaintiff's favor[,]" the need to allow for prejudgment action is recognized. *Id*. Similarly, the Fourth Circuit has held that a district court may enter a pre-judgment order to "freeze or otherwise interfere with the defendant's assets," if the plaintiff's claims "seek cognizable relief in equity involving the assets of the defendant." *Us. ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 497 (4th Cir. 1999).

While Ash neither seeks a prejudgment attachment as described in *Keystone*, nor a "freezing" of assets as described in *Rahman*, the intended purpose of the instant application remains the same: maintain the status quo of the parties under extraordinary circumstances. In other words, Ash seeks to ensure that Ward is restrained from taking any further adverse action to unlawfully withdraw and convert the Companies' funds, which would result in immediate and irreparable harm to the Companies' business operations threatening their solvency.

---

[3] *See, e.g.*, *Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987).

In accordance with Rule 65, a court may issue a temporary restraining order "without written or oral notice to the adverse party or its attorney[,]" but only if the "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[,] and the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(A)-(B).

In *Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7 (2008), the Supreme Court enumerated a four-part test for movants seeking a TRO or preliminary injunction. There, the Court held that: "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. at 20; *see also Amazon.com, Inc.*, 2020 WL 4353563, at *4 ("A grant of temporary injunctive relief requires the movant to establish four factors: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendants if the preliminary injunction is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest."); *accord Toure*, 458 F.Supp.3d at 396 (holding same). However, while this is a high bar, injunctive relief "is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Given this relaxed threshold standard, when the Court analyzes the *Winter* factors in light of the facts described herein, supported by the Ash Affidavit, Ward's conduct merits this Court's immediate action. The Companies will be irreparably harmed if Ward succeeds in his attempt to

misappropriate their funds, satisfying the first factor.  By contrast, Ward is not likely to be harmed if the Court enjoins his conduct, satisfying the second factor.  Furthermore, given the clear and unambiguous language in the Companies' respective operating agreements, and given Ward's utter lack of authority and consent to transfer the Companies' funds into own personal accounts, Ash is likely to succeed on the merits, thus satisfying the third factor.  Finally, the public interest would be well served by enjoining Ward's conduct, including the Companies' employees, the Companies' tenants, the numerous employees of the Companies' sub-contractors, and several of the Companies' contracting partners throughout the Commonwealth.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that this Court enter the immediate injunctive relief as set forth in Plaintiff's accompanying Proposed Order.

Dated:  December 23, 2020

Respectfully submitted,

*/s/ Derek H. Swanson*
Derek H. Swanson (VSB No. 73463)
DUNLAP BENNETT & LUDWIG PLLC
8003 Franklin Farms Dr., Suite 220
Richmond, Virginia 23229
Telephone: (804) 385-0620
Facsimile: (804) 977-2680
*dswanson@dbllawyers.com*

Thomas M. Dunlap (VSB No. 44016)
DUNLAP BENNETT & LUDWIG PLLC
8300 Boone Blvd,
Ste 550
Vienna, Virginia 22182
Telephone: (703) 777-7319
Facsimile: (703) 777-3656
*tdunlap@dbllawyers.com*

Michael W. Lehr (VSB No. 94859)
DUNLAP BENNETT & LUDWIG PLLC
8003 Franklin Farms Dr., Suite 220
Richmond, Virginia 23229
Telephone: (804) 477-8678
Facsimile: (804) 977-2680
*mlehr@dbllawyers.com*

*Counsel for Plaintiff*